**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| **HON. CLAUDE EARL WALKER, Attorney General of the Virgin Islands of the United States, in his official capacity; and the GOVERNMENT OF THE VIRGIN ISLANDS OF THE UNITED STATES,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Petitioners, ) | Civil Action No. 2018-0001 |
| )<br>v. )<br>) | |
| **AMERICAN EXPRESS CENTURION BANK and AMERICAN EXPRESS BANK, FSP.,** )<br>)<br>) | |
| Respondents. )<br>_____) | |

**Attorneys:**
**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
**David I. Ackerman, Esq.,**
Washington, D.C.
    *For Petitioners*

**Chad C. Messier, Esq.,**
St. Thomas, U.S.V.I.
**David S. Lesser, Esq.,**
New York, N.Y.
**David W. Ogden, Esq.,**
Washington, D.C.
    *For Respondents*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER is before the Court on a Report and Recommendation ("R&R") issued by Magistrate Judge George W. Cannon, Jr. (Dkt. No. 20), pursuant to an Order referring this matter for the same (Dkt. No. 16). In his R&R, the Magistrate Judge recommends that the Court remand

1

to the Superior Court of the Virgin Islands the "Petition to Enforce Administrative Subpoena under 12A V.I.C. §104(b)" ("Petition") filed by the Attorney General of the Virgin Islands and the Government of the Virgin Islands (collectively "Government"). (Dkt. No. 1-1). American Express Centurion Bank and American Express Bank, FSP (collectively "American Express") filed Objections to the R&R (Dkt. No. 22), to which the Government responded (Dkt. No. 34), and American Express then replied (Dkt. No. 35).[1] For the reasons that follow, the Court rejects the Magistrate Judge's R&R, as discussed herein, and will retain jurisdiction over the Petition.

## I. BACKGROUND

In this action, the Government issued a "Civil Investigative Demand" ("CID") directing American Express to produce information and documents relating to allegations that American Express engaged in disparate treatment of consumers, including consumers in the Virgin Islands. (Dkt. No. 1-1).[2] The allegations against American Express were originally asserted in an administrative proceeding before the Consumer Finance Protection Bureau ("CFPB"). (Dkt. No. 4-2). In August 2017, American Express and the CFPB entered into a 46-page Consent Order (the "Consent Order") resolving the CFPB's allegations. As part of the Consent Order, American Express paid more than $90 million in remediation. American Express agreed to the Consent Order

---

[1] American Express Centurion Bank and American Express Bank, FSB, merged on April 1, 2018 to form a single banking institution—American Express National Bank. (Dkt. 31 at 1 n.1). *See Matter of American Express Co. v United States Virgin Is. Dept. of Justice,* 178 A.D. 3d 426, 115 N.Y.S.3d 236 (N.Y.A.D. 2019).

[2] The CID requested, *inter alia*, documents regarding American Express' terms, services and collection practices in the Territory; the identity of personnel involved in or responsible for promoting American Express products or services in the Territory; personnel organizational charts; and documents reflecting American Express' assessment of credit needs, market competition, and pricing in the territory.

2

"without admitting or denying any of the [CFPB's] findings of fact or conclusions of law." (Dkt. No. 4-2 at 3-4). The Consent Order also specifically states that its provisions "do not bar, estop, or otherwise prevent . . . any other governmental agency from taking any other action against" American Express. (Dkt. Nos. 1-1 at 67; 4-2 at 45).

Although American Express allegedly cooperated with investigating authorities in the continental United States in connection with the conduct described in the Consent Order, the Government has alleged difficulty in the course of its investigation. The Government thus initiated proceedings in the Superior Court of the Virgin Islands to enforce American Express' compliance with the CID so that the Government could gain access to materials necessary to determine whether American Express' conduct violated, among other things, the Unfair Trade Practices Act, 12A V.I.C. § 101 *et seq.* (Dkt. No. 1-1 at 2-9). On the same day as the Government's filing in the Superior Court, American Express filed a "Petition to Quash Non-Judicial Civil Investigative Demand and for a Protective Order" in the Supreme Court of the State of New York, County of New York.

Thereafter, American Express timely removed the instant enforcement action from the Superior Court to this Court pursuant to the "Edge Act," codified at 12 U.S.C. § 632. The Edge Act grants federal jurisdiction over certain types of civil matters in which a federally chartered bank is a party. In its Notice of Removal, American Express contends that removal is proper because: (1) the Petition is a "suit of a civil nature at common law or in equity;" (2) the Government's action to enforce its CID related to American Express' credit and charge card services "arises out of transactions involving banking in a dependency or insular possession . . . for purposes of Edge Act jurisdiction;" (3) "[t]he Action involves traditional banking activity by requesting materials related to, *inter alia*, [American Express'] pricing, fee structure, and

3

condition[s] for credit and charge cards issued in the U.S. Virgin Islands;" and (4) "[t]he Action also involves credit and charge card underwriting account management services" and "implicates 'financial operations'" under the Edge Act. (Dkt. No. 1 at ¶¶ 15-18).

American Express filed an Opposition to the Government's Petition to Enforce the Administrative Subpoena (Dkt. No. 3), repeating the same arguments it asserted in the New York court. The Government filed a Reply Brief (Dkt. No. 11), and the Court referred the matter to Magistrate Judge George W. Cannon, Jr. for consideration of both the jurisdictional issue and the enforcement action "as appropriate." (Dkt. No. 16). Shortly thereafter, Magistrate Judge Cannon issued his R&R, finding that the Court lacked jurisdiction over this dispute and recommending that the matter be remanded to the Superior Court. (Dkt. No. 19). American Express filed Objections to the Magistrate Judge's ruling. (Dkt. No. 22).

In the interim, the New York litigation proceeded. The Government responded to American Express' Petition and filed its own Motion to Dismiss in the New York state action. The New York state trial court denied American Express' petition and granted the Government's Motion to Dismiss, finding, *inter alia*, that the matter "should be litigated in the U.S. Virgin Islands, the jurisdiction with the greater interest in the matter." (Dkt. 23-1 at 3). The trial court's decision was subsequently reversed by the Appellate Division of the Supreme Court of the State of New York, First Judicial Department, which found that the petition to quash should have been granted. *See Matter of American Express Co. v United States Virgin Is. Dept. of Justice*, 178 A.D. 3d 426, 115 N.Y.S.3d 236, 237 (N.Y.A.D. 2019). Thereafter, the Appellate Division rejected a motion by the Government to reargue the case. *See In re Am. Express Co. v. United States Virgin Islands Dep't of Justice, et al.,* 2020 WL 1057944 (N.Y. App. Div. Mar. 5, 2020).

4

In recommending remand of the Petition to the Superior Court, Magistrate Judge Cannon concluded that the Petition and related CID did not arise out of a banking activity. (Dkt. No. 20). Specifically, the R&R states:

> Here, the action removed is enforcement of an administrative subpoena. Even though the subpoena itself requests information that appears to be related to banking activity, the instant Petition is not an action arising from a transaction involving banking. The documents provided to the Court show only that a suit may arise at a future date. A complaint that alleges a violation of law and that contains sufficient facts to show that a transaction involving traditional banking activities is connected to that violation has not been filed.

*Id.* at 5 (some citations omitted). American Express' Objections—discussed more fully below—challenge Magistrate Judge Cannon's conclusion that the Petition does not arise "from a transaction involving banking" and argue that each requirement for the application of the Edge Act has been satisfied. (Dkt. No. 22).

## II.   DISCUSSION

### A.   Applicable Legal Principles

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). Where—as here—a party makes a timely objection, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Accordingly, the Court will review the matter *de novo*.

Federal courts are courts of limited jurisdiction and thus, are permitted to adjudicate cases and controversies only as allowed under Article III of the United States Constitution. Art. III, § 2. American Express argues that the Petition is properly before this Court because it falls within the purview of the Edge Act, 12 U.S.C. § 632. (Dkt. No. 1 at 1-2). In pertinent part, the Edge Act provides:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits.

12 U.S.C. § 632.

In removal cases, the party seeking to remove an action from state court to federal court bears the burden of establishing federal jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) (burden of establishing federal jurisdiction on the party asserting jurisdiction); *Vodenichar v. Halcón Energy Properties, Inc.,* 733 F.3d 497, 503 (3d Cir. 2013) (party seeking removal under Class Action Fairness Act bears the burden of proving action is properly removed under that statute). Removal statutes should "be strictly construed and all doubts resolved in favor of remand." *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) (eminent domain case was improvidently removed from Virgin Islands Territorial Court); *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002) (removal jurisdiction raises substantial federalism concerns and is to be strictly construed).

**B.     Review of R&R**

American Express argues that removal is proper pursuant to the Edge Act and that the Magistrate Judge erred in concluding otherwise. The parties do not appear to have any disagreement regarding whether American Express satisfies the second prong of the Edge Act test—that is, that the action involves a corporation organized under the laws of the United States. The relevant questions, then, are whether the Petition—which seeks to enforce an administrative CID—is a "suit of a civil nature" within the meaning of the Edge Act, and whether the Petition arises out of the type of transactions contemplated by the Act.

Regarding the first prong of the Edge Act, the Virgin Islands Rules of Civil Procedure provide that "[t]here is one form of action—the civil action." V.I. R. Civ. P. 2. Further, under Virgin Islands law—which governs here—a subpoena enforcement action is a civil action. *See In re Moorhead*, 27 V.I. 74, 86 (Terr. Ct. 1992) (a "civil action . . . applies to unlimited non-criminal proceedings, including petitions for admission to U.S. citizenship, habeas corpus proceedings, *subpoena enforcement proceedings*, removal proceedings, proceedings to enforce administrative orders, and most special proceedings.") (emphasis added); *see also In re Virgin Islands Dept. of Labor Div. of Occ. Safety & Health Subpoena*, 2018 WL 3641738, at *1 (V.I. Super. Ct. July 26, 2018) (subpoena from agency "is considered to be a civil action in all pertinent respects") (citing *Gov't Emps. Ret. Sys. v. Gov't of the V.I., Office of Attorney General*, 64 V.I. 205, 212 n.1 (V.I. Super. Ct. 2016); *Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374, 1377 (S.D. Fla. 2004) (in Edge Act case, "[t]o determine whether a bill of discovery is considered a suit or cause of action, [the court] *look[s] to state law*.") (emphasis added).

The Government attempts to distinguish the Petition from a typical civil lawsuit by arguing that the Petition merely deals with a "failure to comply with a Subpoena commanding production

7

of documents" and that American Express "is either required to produce documents pursuant to the Subpoena or it is not." (Dkt. No. 34 at 6, 8). However, there is no authority which suggests that, because an enforcement action does not involve a complaint or other typical indicia of civil litigation, such a proceeding is not a civil action under Virgin Islands law and within the meaning of the Edge Act. Indeed, the courts in *Moorhead* and the other cases cited above specifically included subpoena enforcement proceedings within the scope of a civil action. *In re Moorhead*, 27 V.I. at 86; *In re Virgin Islands Dept. of Labor*, 2018 WL 3641738, at *1; *Gov't Emps. Ret. Sys.*, 64 V.I. at 212 n.1. The Court therefore concludes that the Petition is of a "civil nature" under the Edge Act.

Regarding the third prong of the Edge Act, the Magistrate Judge found that the "Petition is not an action arising from a transaction involving banking." (Dkt. No. 20 at 5). In support of the Magistrate Judge's construction of the Edge Act, the Government argues that the only matter at issue in the enforcement action is the "production of documents," which is simply—in their words—a "litigation activity," not a "banking activity" or "financial operation." (Dkt. No. 34 at 6). American Express, on the other hand, argues that "the entire underlying dispute between the parties"—demanding documents in order to determine whether American Express' activities potentially violate Virgin Islands law—arises out of traditional banking activities in the Territory. (Dkt. No. 22 at 18).

The Court agrees with American Express. While there is certainly a distinction between the Petition—which essentially amounts to a discovery demand—and a hypothetical full-blown lawsuit filed by the Government against American Express, they both would be civil actions addressing matters at the core of the Edge Act. The Court finds the Magistrate Judge's interpretation to be too narrow, in that the Petition arises out of something larger than American

8

Express' failure to provide documents in isolation. The Government is not simply seeking documents for the purpose of collecting documents, but rather so that they can *investigate American Express' banking activities* within the U.S. Virgin Islands. (Dkt. Nos. 1-1 at 4; 34 at 1-2). In other words, the Government's attempt to enforce the CID arises out of "transactions involving . . . banking in a[n] . . . insular possession of the United States . . . ." 12 U.S.C. § 632.

The Magistrate Judge cited a series of cases to distinguish actions "related to banking activity" (*i.e.*, attempting to collect documents) from actions "arising from" banking activity (*i.e.,* collecting documents *regarding potential banking violations*). (Dkt. No. 20 at 5 n.2). For example, the Magistrate Judge cited *Diaz v. Pan Am. Fed. Sav. & Loan Ass'n*, 635 F.2d 30, 31 (1st Cir. 1980); *Sollitt v. KeyCorp*, 463 F. App'x 471 (6th Cir. 2012); and *González Román v. Federal Land Bank of Baltimore,* 303 F. Supp. 482, 483 (D.P.R. 1969). These cases, however, are readily distinguishable from the instant matter.

In *González-Román,* 303 F. Supp. at 483, plaintiffs brought an action challenging a prior foreclosure proceeding initiated by a bank, arguing that it was null and void due to a lack of jurisdiction. The court held that an action challenging *the validity* of the foreclosure, despite the bank being a party to the original proceeding, was not itself an action arising from a transaction involving banking. Specifically, the court stated that "[i]t is rather an independent action brought in a local court to obtain relief from a federal judgment which is characterized by plaintiffs as absolutely null and void." *Id.*

Likewise, the decision in *Diaz* does not support the Government's arguments in this case. In *Diaz*, the plaintiff drew several bad checks against a bank, which resulted in criminal charges filed against plaintiff. 635 F.2d at 31. Plaintiff sued for malicious prosecution in federal court, relying on the Edge Act as the basis for the court's jurisdiction, and the district court dismissed the

9

action. *Id.* The First Circuit upheld the dismissal, explaining that even though the original dispute was plaintiff's bounced checks—which is itself a banking activity—the basis for the lawsuit was "the filing of a criminal complaint," which was itself a separate action that was one layer removed from the passing of bad checks. *Id.* at 32. The malicious prosecution, the court explained, did not, therefore, "'arise out of a banking transaction.'" *Id.*

Similarly, the decision in *Sollitt* is inapt here. In that case, an employee of a bank holding company reported to management that a co-worker was making fraudulent transactions with foreign customers. 463 F. App'x at 472. The company then fired the employee after catching him with pornography on his work computer. *Id*. The employee filed suit in state court, alleging wrongful termination. *Id.* After the company removed the lawsuit to federal district court, the court assumed jurisdiction under the Edge Act and granted summary judgment in favor of the company. *Id.* The Sixth Circuit vacated the judgment with instructions to remand the case to state court. *Id*. at 475. Citing *Diaz*, the Sixth Circuit reasoned that the bank's termination of an employee "was not an aspect of 'banking.'" Consequently, the employee's wrongful discharge claim "did not 'arise out of' a banking transaction, even though the entire episode arguably can be traced back to the [reported fraudulent international transactions]." *Id*. at 475.

These cases simply illustrate that the Edge Act does not grant federal courts the power to adjudicate every action involving a federally chartered banking entity. Rather, jurisdiction is premised on whether the action has a nexus directly to an insular or international banking transaction. Stated more generally, a court assuming jurisdiction under the Edge Act must be able to resolve a dispute directly implicating a banking activity, not just one in which a banking transaction existed somewhere in the chain of events. *See Sollitt*, 463 F. App'x at 473-74 ("Suppose, for example, that [the employee] had tripped and fallen over a stack of carelessly placed

10

printouts of foreign-currency transactions. This meager association—ridiculous as it is—between the potential negligence claim and the foreign banking transaction that generated the printouts, would appear to suffice for Edge Act jurisdiction under so limitless a view. That cannot be correct.").

Although the Magistrate Judge—and the Government—are correct in that resolution of the Petition will result only in either the production or non-production of documents, the purpose for which the documents are sought directly implicates banking activity that comes within the purview of the Edge Act. Unlike *González-Román*, *Diaz*, and *Sollitt*, where the disputes arose from activities at least one layer removed from banking and did not require resolution of a matter arising from a banking or financial transaction, the Government's Petition—on its face—focuses on reviewing American Express' banking practices for potential violations of Virgin Islands consumer laws, as disclosed in the CFPB Consent Order, with respect to Virgin Islands businesses and residents. *See Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374, 1377 (S.D. Fl. 2004) (Florida equitable action allowing a pre-suit bill of discovery is a civil action and may be removed under the Edge Act if the discovery is focused on foreign banking transactions); *see also Clarken v. Citicorp Diners Club, Inc*, 2001 WL 1263366, at *1 (N.D. Ill. 2001) (issuance of credit cards involves a traditional banking function "under even the narrowest definition of that term.")) Thus, there is a clear nexus between the civil action—seeking to enforce the CID requesting banking transaction records—and American Express' banking transactions in an "insular possession" of the United States. As such, the Court has jurisdiction over the Petition.[3]

---

[3] The Government raises—as an additional argument—that judicial estoppel bars American Express from claiming that the *federal* court has jurisdiction over the Petition based on their tactical decision in the parallel proceedings to file suit regarding the same matter in New York *state* court. (Dkt. No. 34 at 3-5). "Judicial estoppel is a fact-specific, equitable doctrine, applied at

11

### III. CONCLUSION

Upon the Court's review of the record in this case, the Magistrate Judge's R&R is rejected. The Petition was properly removed to this Court pursuant to the Edge Act.

In light of both the Court's decision to reject the R&R and the intervening proceedings in the New York state court system, the Court will allow the parties an opportunity to file supplemental briefing regarding the merits of the Petition.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 17, 2020 _____/s/_____
WILMA A. LEWIS
Chief Judge

---

courts' discretion." *In re Kane,* 628 F.3d 631, 638 (3d Cir. 2010). "'[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Id.* (quotation omitted). However, American Express has not presented inconsistent positions. Nowhere have they argued that state courts are unequipped to address the potential claims asserted by the Government. Nor has American Express argued that Edge Act matters belong exclusively in federal courts. American Express was the master of their own case in the New York proceedings, and it is not inconsistent for them to choose to invoke the New York state court system to address the same issues that they seek to have a federal court resolve here.